Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States in this honorable court. Thank you very much for being here this morning. We're very sorry we can't take you in person in New Orleans for this case and we appreciate your being able to participate in this unusual way and we hope to have a fruitful oral argument with as much verisimilitude as possible. I have a few instructions to begin with. Number one is that we, and you're both doing this very well already, it's good if you can look up into the monitor instead of looking down so we can see your faces. We do not allow video or photos or recordings of this hearing just as if we were in New Orleans. Please mute any telephones for those if anyone is in the background and in order to try and facilitate the argument each of you will have five minutes uninterrupted time. So with that we'll call the first case of the morning number 19-51-000 in the matter of James Quezada and hear from Mr. Cook to begin with. Thank you. May it please the court my name is Mike Cook representing the appellants James and Simona Quezada. This case involves a single issue of whether the statute of limitations has run on the assessment made against the appellant in 2014. The question underneath the issue is whether the respective forms 1099 as filed by appellant or form 945 as asserted by the IRS is the return that triggers the running of the statute of limitations. If the respective filing dates of forms 1099 accompanied with form 1096 which is a summary of the 1099s filed if those forms start the running of the statute of limitations for tax years 2005 through 2008 then the assessment is barred because it was assessed nine years after the 2005 years six years after the 2008 year. If on the other hand the statute of limitations is triggered by form 945 then the statute did not run because the taxpayers the appellant did not file form 945. This case does not involve any other tax issue it does not involve any deficiency or any other aspect of appellant's tax filings. In his career in the construction business he's never had another tax issue. The appellant's position that the 1099s trigger the statute of limitations that is for the assessment of the penalty under section 3406 are the correct returns for purposes for statute of limitation purposes because it is only those returns that contain the information from which the assessment can be made. And the assessment was in fact made on those returns simply by multiplying 28% by the total amounts of compensation shown on the forms 1099 as summarized in form 1096. The appellant relies on a 1940 primarily on a 1940 Supreme Court case called Germantown Trust. The it and every other case dealing with the question of what is the return holds that the document claimed to be the return must contain sufficient information from which the IRS can compute an assessment. In Germantown the taxpayer filed a fiduciary income tax return and in those days the statute of limitation on that return was two years. The Internal Revenue Service took the position that Germantown Trust was in fact a corporation and should have filed a corporate return. The statute of limitations for that return was four limitations because the IRS could have computed the tax from the information on that return. This is not a case of a substituted return. The taxpayer files 1099s undoubtedly without the proper numbers on those returns but it had the correct information from which an assessment could be made. The IRS relies on a subsequent Supreme Court case, the Lane Wells case, and the bankruptcy court and the IRS are attempting to fit the facts of this case into the Lane Wells facts. In Lane Wells the taxpayer filed a corporate income tax return at form 1120 and the IRS said that you must also, you're a personal holding company, you must also 1120 PH. Lane Wells took the same position that the Supreme Court held in Germantown and said you could have determined the personal holding company tax from the return we filed. The Supreme Court said no, there are two returns and two filing requirements here. So we go back now to the holding in the bankruptcy court in this case and there the court held that this was a Lane Wells case because the taxpayer, the appellants, had to file forms 1099 to be able to take a deduction on form 1040. That is simply an erroneous holding. There is no law to support that. In fact, Mr. Cook, let me ask you, I thought the whole dispute was over the adequacy of this form whether this form 945 is the return. That is part of the issue but the the taxpayer, the appellant's position is that the information filed on the 1099 was sufficient to make this assessment and in fact the assessment was made from that information. Well I understand that but the, and I certainly understand your argument, your, your, your, is your client contending at this point that somewhere back in his files he had TINs for these employees or these contractors? He, he, indeed he is and was at the time of the trial in the bankruptcy court, he testified under oath that he had collected these numbers. Uh, we understand the government's position that, uh, at the, in 2012, uh, during the administrative appeal, uh, there was a letter presented and I, I wrote that letter for him based on the information that he gave me that he did not have all of the numbers but that is, uh, it, that has never been positioned, that has, the inference that's been made by the government from that letter was it didn't have any of the numbers. You have to keep in mind that in 2012 it was seven years after the first year and four years after the last year involved in this case, uh, the appellant was confused as to whether he's been asked if he had the numbers or did he get them because it's, if he got them, then there's no requirement to file, uh, this form 945. And if I may return to your original question, yes, we are, it is our position that the 945 is not a return that can trigger the statute of limitations. It does not contain all of the information necessary, uh, from which, if he'd filed it, there wasn't, wouldn't have been enough information on that return to make the assessment that was made. Well, let me, let me ask you because I am not a tax lawyer but I have for many, many years been an employer of household employees and in that is a summary of the W-2s and it has to be filed on February 1, but we do not have to pay the taxes on the employees until April 15 with our 1040. Now is the 945 similar to the W-3? Is that, I don't quite understand the role that the W-3 plays. I don't understand when this 28 back percent backup withholding would be paid if it had to be paid. The counterpart to the W-3 for independent contractors is form 1096, which was filed along with the 1099s. The 1096 is as the W-3 is for the 1099s and unlike the payroll tax that you paid for an employee, the taxpayer, the taxpayer hiring independent contractors does not pay any of that tax. What happens? Does the BEARD, the four-part test in the BEARD case, is that applicable here? I believe it is, your honor, although it is not. This, the appellant's not taking the position that the 1099s are substitute returns, but the BEARD case set out a four-factor test for what a return is and it's been followed consistently since the 1980s when BEARD was decided. Those four factors are that it must contain. My question, do you satisfy those factors here and is it necessary for you to satisfy those factors in order to constitute a return? Your honor, we take the position, yes, we've satisfied those factors. The government... How have you satisfied the fact that honest and reasonable attempt to satisfy the requirements when your client was warned on several occasions of what he needed to do in order to satisfy his obligations and he completely ignored them? How does that fall within any kind of honest attempt to satisfy the obligations that were imposed upon him? Because the question becomes, did he have to file a 945? If he didn't collect, he didn't do any back... Well, let me back up just a moment, your honor. The notice that came to him in each of those years was long beyond the year end as it would have to be after the year end, but not with the length of time that the IRS took in his case. First of all, the so-called notice is a form called CP 2100. It doesn't mention anything about 945 in that notice. You have to go then to a referred publication to figure out what you're supposed to do. Those notices came to him anywhere from nine months to 16 months after the year end. It was in fact impossible for him to do back up withholding. I mean, it came to him. It didn't come to him over a period of time. On at least four occasions, he was aware of this, and at least at some point, you would have expected him to make some kind of inquiry about what his obligations were in this respect, and he didn't do it. Well, I can't speak to what he did or didn't do. He didn't have any tax help during that period of time. But again, it goes to the ultimate question, did he have to if he didn't make any back up withholding. But you don't dispute that your client had an obligation to back up withhold. That's indisputable, correct? No, it is disputable. It goes to the question of whether he collected the numbers in the first place under Section 3406. He knew his contractors had not provided the taxpayer identification numbers. He received multiple letters from the IRS during those years saying he must back up withhold in that situation. Isn't that true? No, the only evidence regarding whether those subcontractors furnished the numbers is his own testimony, which the IRS did not counter that testimony. He said he collected the numbers. Yes, he didn't have these notebooks that he said he collected them in at the time of the trial. But in the record, are the 1099s with numbers on them? They had to come from someplace. Now, when they were put on the 1099s that are in the record, I do not know. I was not involved in the trial of the case. But this is brick mason with a seventh grade education. And the forms that we're talking about are in the record. And it would be impossible for any layman to follow those forms as an instruction to either back up withhold or to file Form 945. In fact, I call your attention to the trial record where the IRS attorney himself said that he didn't have to file Form 945 because if he didn't do any backup withholding, he didn't have anything to put on those forms, and therefore it would be meaningless. If he didn't have to file a form, then it couldn't be a form that would trigger the running of the statute of limitations. So, I mean, in a way, you're taking a very aggressive position saying that your client basically didn't do anything wrong. And that's why the statute of limitations shouldn't apply. In other words, he didn't have to file this form. He had the TINs, even though there's a fact finding to the contrary. And therefore, and the IRS said he didn't have, I mean, this is extraordinarily aggressive vis-a-vis the fact findings, it seems to me. And that is our position. I cannot agree that it's aggressive. I mean, he filed 1099s that contained the information the assessment was made on. And the assessment was made many years after the assessments were made, many years, after three years after filing those 1099s. Well, and one other point is, you say he had a seventh grade education, but just doing a very, very rough calculation, this is a guy who's running a business that was probably nearly a million dollars a year. I don't know how much is gross. Well, it looked as if the backup withholding, I mean, to get to 1.2 million owed to the IRS, even slicing it in half for penalties and interest, that's 150,000 in backup withholding each year. I mean, maybe Ms. Springer will be able to explain, but he's a pretty successful seventh grade educated guy. Well, he may be. I guess he's a good bricklayer. But the point, well, I'm sorry. I'd like to train a thought on your question. That was argumentative. I'm sorry. That was just sort of argumentative. But I will add this, there are no allegations of fraud in this case. Isn't that correct? That is correct. And in fact, one other point that should be made, we tied, but didn't really tie them together, but we said the 1040 was also the income tax return was in the mix as a return that would trigger the statute of limitations. The sole purpose for that was to show the accuracy of his 1099s because the total amounts showed on the 1099s that was deducted on the 1040 every and they had no adjustment. All right. Thank you. We'll move on to Ms. Springer. Yes. Good morning and may it please the court. My name is Nora Springer and I represent the government in this appeal. Mr. Gazzana contends that filing his income tax returns and forms 1099, which are information returns provided to facilitate the payment of the payee's tax, started the three-year limitations period for a different kind of tax as backup withholding liabilities. But regulations required Mr. Gazzana to file a different form, the form 945, for the backup withholding liabilities. Mr. Gazzana did not file any form 945. And the district of bankruptcy courts properly applied the Supreme Court's analysis in Lane Wells to hold that the assessments could be made at any time under section 6501c3 of the Act. Mr. Gazzana is in this position because he failed to meet his legal obligations in at least three ways. First, he did not collect taxpayer identification numbers or TINs from his payees, as the bankruptcy court found. And TINs are critical for the functioning of our income tax system because they allow the IRS to match payments made to the payees with the IRS's enforcement mission with respect to whether the payees meet their own income tax obligations. Mr. Gazzana did not challenge this factual finding, the finding that he did not have his TINs or have TINs for the payees in his appeal to the district court. He's therefore waived any challenge to it before this court. In any event, the bankruptcy court's factual finding on that topic is supported by this May 2012 letter, which Mr. Gazzana signed under penalty of perjury, where he stated that he did not obtain TINs for all of his payees. The bankruptcy court specifically did not credit Mr. Gazzana's testimony of trial on this topic. Mr. Gazzana's failure to collect the TINs led to two other legal obligations, to back up withhold income tax under section 3406 and to file forms 945. The assessment limitations period in section 6501A does not apply here. That provision says that taxes shall be assessed within three years after the return was filed. And it also says that the term return means the return required to be filed by the taxpayer. Congress has given the Secretary of the Treasury the authority to determine what returns must be filed, as well as the forms of those returns. That's in section 6011A of the code. In the office of John H. Circuit explained that the return that starts the limitations period in section 6501A is not any return, but the form prescribed by the Commissioner for the tax at issue. The Treasury regulation applicable here specifies that for backup withholding liabilities, the return is the form 945. But the form 945, excuse me, go ahead. That's right, Your Honor, go ahead. No, you have time. This case instead is governed by section 6501C3. Because Mr. Kezaia failed to file any forms 945, as required by the Treasury regulation, that provision provides that in the case of failure to file a return, the tax may be assessed at any time. In this court, in the Lucia case, explained that Congress has clearly provided that TIN will not bar the collection of taxes for which no returns have been filed. And the objective of that congressional pattern, this court went on to explain in Lucia, this difference between 6501A imposing an assessment limitations period where the return has been filed, and 6501C3 allowing the tax to be assessed at any time when no return has been filed. This court explained that that pattern is to ensure the passage of time will not prevent collection of the tax unless the government has been informed by the taxpayer that there is or might be tax liability. And the Supreme Court in the Badaracco case explained that section 6501C, this may be assessed at any time provision, is unambiguous. But if there's any doubt as to its meaning, it must be strictly construed in favor of the government. So the bankruptcy and district courts correctly apply the Lane-Wells analysis here. Mr. Quezada owed two tax liabilities, income tax and backup withholding, and he was required to file two returns for his own tax liabilities, a Form 1040 for his income tax and a Form 945 for the backup withholding liabilities. Mr. Quezada, as was the case in Lane-Wells, filed only one return, which did not start the assessment limitations period for the other tax. In Lane-Wells, the Supreme Court explicitly rejected the argument, and I quote, that one return addressed to but one of the liabilities answers the purpose of both. And the Supreme Court explained that even if all of the information required for both taxes could have been collected on the form that was filed, in the Lane-Wells case, the corporate income tax return, it did not see how that helped the was fully within the statute and requiring that information in a separate return. The same is true here. Mr. Springer, there are competing interpretations of Lane-Wells, as you know, and what is the government's central beef with what I think is the plurality approach, but reflected maybe most prominently by Judge Sutton's opinion, what is the government's chief reservation about that? Are you talking about the Coffey case, your honor? I'm sorry. No, it was one for about five years ago. I think it's the law office of John Eggerston. So that case, on the one hand here, shows that even if the tax return, the taxpayer would have filed, would have reflected only zeros, the taxpayer still had to file that return in order to start the limitations period. But the Eggerston case is among several cases where courts have looked to Lane-Wells and concluded that whether the return contained sufficient information was material in Lane-Wells. And it's our view that the analysis of Lane-Wells does not depend on whether the return contains sufficient information. Justice Jackson and Lane-Wells went out of his way to explain that it's important for the functioning of the tax system that the treasury be able, and it is empowered by Congress to do this, to prescribe returns in forms of returns and to require taxpayers to comply. And again, the Supreme Court commented in that case that even if all of the information could have been on a return that was filed, that didn't help the taxpayer because the treasury could have required two returns. Well, Ms. Bringer, if that were so, then why Beard would have been wrong, wouldn't it? Well, no, Your Honor. So Beard was a case that involved one kind of tax and one return. So at issue in Beard was an altered Form 1040. And the question in Beard was whether the taxpayer's form called into question its validity as a return to begin with. So Beard was not a case involved. Yes, but Beard has been widely viewed as setting forth a test for what is a sufficient return. That's true where the taxpayer files the return that's required to be filed. And so what cases have held that Beard is limited to that narrow situation? Your Honor, I'm not aware of a case that's held that except for this case here. But in the Supreme Court's analysis in Lane Wells, it declined to apply Germantown Trust for the same reason. It said Germantown Trust is a case that involved one tax liability and one return. And here the taxpayer was required to file two tax returns for two tax liabilities. And so for the same reason, the district court and the bankruptcy court correctly held that Beard does not apply here. But even if Beard applied here, the bankruptcy court did not clearly err in finding that Mr. Quezada failed to meet the four-factor test in Beard. The bankruptcy court held that Mr. Quezada's, excuse me, that Mr. Quezada's returns did not contain sufficient data to calculate the tax liability, and also that he did not advance an honest and reasonable attempt to satisfy the tax liability. So your whole calculation is built off what the 1099s reflected, isn't it? So, Your Honor, with respect to the sufficient data point, setting aside the honest and reasonable attempt point, which Mr. Quezada did not even challenge in his opening brief to this court, but on the sufficient data point, the 1099s provided information for the IRS to calculate a maximum tax liability. In a similar way to, you know, when the IRS receives a W-2 for an employee, it can calculate a maximum tax liability for that employee. It doesn't mean that when the IRS receives the W-2, the employee has satisfied his or her income tax obligation. Here, critically, what was missing was the taxpayer ID numbers so that the IRS could see whether or not Mr. Quezada's payees had met their own income tax obligations. If they had, his backup withholding liabilities would have been reduced. But moving on to the honest and reasonable attempt to satisfy the tax law point, again, Mr. Quezada did not mention that in his opening brief to this court. I disagree with you. The whole upshot of his argument is that if he made a mistake, it was an honest mistake. I think that argument of yours is mistaken. Well, Your Honor, the bankruptcy court looked to four things to support its view that Mr. Quezada did not evince an honest and reasonable attempt to satisfy the tax law. The bankruptcy court noted, and this is at page 20 to 21 of the record, that Mr. Quezada was missing tins four years in a row, that tins were not provided even after notice, that they were missing for some people in multiple years, and that he failed to backup withhold even after receiving actual notice that he should do so. So in our view, the bankruptcy court's finding that he did not show an honest and reasonable attempt to satisfy the tax law is well your argument without the other conclusion. But I was sort of taken by the fact that he said Mr. Quezada had never in 40 years, that he had not filed a 945 in 40 years. And for some reason, the IRS never come after him. Your Honor, I don't have the entire history of Mr. Quezada's tax liabilities. I have access to what's at issue in this case. And so I don't know one way or the other whether that's true. But in any event, even if the IRS has not pursued Mr. Quezada for these liabilities in the past, that does not foreclose the IRS from doing so now. And in fact, yes, Your Honor. Well, I will say that the form 945, as it then was, was rather misleading. It was rather ambiguous about the duty to file. Your Honor, it's been changed since his case was in progress, I believe. Yes, the instructions for the form 945 have been clarified since the years at issue here. The instructions that Mr. Quezada looks to stated to enter any backup withholding. And the IRS's intention has always been that that instruction would include both actual backup withholding and withholding that Mr. Quezada was required to withhold. A key point here is that the Treasury regulation, which required him to file the 945, is legally binding, whereas this court held in Carpenter and many other courts have held similarly, that IRS instructions and forms do not have legal force. So, but even if Quezada's reading of the instructions is correct, his key point is that as he reads the instructions, that he would have filed a return that contained only zeros, but he was required to file that return and he was required to file that return to start the assessment limitations period. I think the problem, I mean, again, I'm looking at it through the lens of somebody who has struggled with W-2s and W-3s just in the limited household employer situation, but on the face of the form or right with it, the instruction said, if you don't have this withholding, you don't file. Your Honor, the instructions for the form, they're ambiguous. Oh, I agree with you on that point. They say, if you withhold federal income tax, including backup withholding from non-payroll payments, you must file form 945. And then it goes on to say, you are not required to file form 945 for those years in which you do not have a non-payroll tax liability. Mr. Quezada did, however, have a non-payroll tax liability. He had that liability because he did not have TINs from his payees. He was required to backup withhold and did have that liability for these years at issue. He was also specifically notified in these notices that he received from the IRS that he was required to backup withhold. So this is not a situation where we have a taxpayer who had no notice or no way of discovering these obligations. Mr. Quezada had plenty of notice in the statute and the regulations and the instructions for the form 1099, which specifically go over the duty to backup withhold if you don't have TINs. And then even in these individual notices that the IRS sent to him. And despite all of that notice, Mr. Quezada still failed to meet his obligations here. Are there any further questions from the panel? I guess not. All right. Well, because Mr. Thank you very much. We'd ask this court to affirm. Thank you. Let me ask you. Yes, Your Honor. Sum up. What is your position here? Just very briefly. What is your position with respect to the case? What is your argument in summation? Our argument is that the return that starts the assessment limitations period in section 6501A is that required to be filed by the taxpayer. Here for backup withholding liabilities, the return is the form 945. And because Mr. Quezada never filed the return he was required to file, this case is governed by section 6501C3 and the assessments may be made at any time. What is your position with respect to whether these other forms may have provided the information that was necessary to make an assessment? Well, again, Your Honor, whether the forms include sufficient data does not end the analysis. In Lane Wells, the Supreme Court made clear that the Treasury is authorized to require the filing of separate returns. And in the Bufford case in 1993, the Supreme Court was considering the question of whether an S-corporation return started the assessment limitations period for an individual income tax. And the court commented that the S-corporation return would not have had sufficient data to start the clock for or to calculate the liabilities for income tax. But the court went out of its way to say even if the S-corporation return had included all of that information, we're not saying it would have been the return. So the point is that taxpayers have an obligation to file the returns that the Treasury requires them to file. Here Mr. Quezada failed to meet that obligation and the taxes may be assessed at any time. Okay, thank you very much. Thank you very much. Okay, Mr. Cook, unmute yourself, please. You're on mute and you have five minutes for rebuttal. There you go. If I may, I will return to the Lane Wells position of the government. I briefly noted that the bankruptcy court took the position that the 1099s were required to be filed to obtain a deduction under 1040. The government has never pursued that erroneous holding. In fact, the district court in its opinion did not follow it. Here the government continues though with that theme by saying that the 1099s were actually a part of the filing of the 1040 and that isn't correct. They were not attached to the 1040. 1099s and the accompanying 1096 has its own filing requirements. It is completely separate from the form 1040 filing requirements. The government's position of tying those together is solely for the purpose of making it fit Lane Wells. Even the Buford case just now cited by counsel does hold that if the returns contain sufficient information to make the calculation of the assessment, then it starts the statute of limitations. It said that basically a corporate return for an S corporation was simply not the same as for a C corporation. The 945 question and the IRS makes light of our argument that the instructions say if you made backup withholding, you file form 945 and say that those instructions are not law, the regulations are law. I agree that instructions do not fall in the category of authority like a statute or regulations in the sense that the IRS can change those instructions at any time. In fact, they did, but not for the years we have in question here. But instructions are an extension of regulations. It's a further interpretation and this whole question about whether a taxpayer is acting in good faith, if he reads the instructions, how else can he come away with any conclusion other than if I didn't collect any backup withholding, which in this case was impossible to do with subcontractors, then he doesn't file a form 945. Well, when you say this was impossible, once he started getting notices, couldn't he have correct changed his ways? Because the point of this withholding is to say that you on the 1099, you're going to insert the taxpayer identification number. And I haven't read the record, but it sounds to me as if some of these 1099s did in fact have TINs attached on them, TINs written down on them. So once he got the first notice, even though it's 16 months later, and those contractors may have gone off to the wind, he knows going forward, doesn't he, to tell his new contractors, you've got to give me a social security number, we're putting it down on your, you know, whenever you enter on duty or whatever. And his testimony was that he did do that. And I agree with you that he's seen something from the IRS telling him what to do, and you're right, he can't collect from a subcontractor who is not working for him at that time. Again, the record is confused with whether he says he didn't have them, he didn't say he didn't collect them, and he testified under oath that he did collect the numbers. Well, he obviously put some of them down on his 1099s, correct? I ask what did he do with the numbers if he collected them? What happened? I don't, well, he eventually found them. Again, they were many years after these years in question. Now, addressing the question of why they didn't get on the 1099s for the years 2005-2008, and I don't, I will tell you up front, I don't know how much of this is in the record. He had a regular accountant, an enrolled agent, former IRS agent who becomes a practitioner, and he filed 1099s for all the years before and after the years in question. Mr. Quesada's wife penciled them in for the years in question, and I can't, and nobody can, explain why the numbers didn't get on those 1099s. Because they're hard for anybody to read. I've been struggling with household employees for years, even though that's probably one of the simplest things, but I tell you, I'm not biased. I take every case on its own fact. Okay, Mr. Cook, do you have anything else to say? I have nothing further. Thank you, Your Honor. All right, thank you very much. Very well argued on both sides. Will say I do. Thank you very much.